UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
KYONG JA KANG,

               Petitioner,

   -against-

UNITED STATES OF AMERICA,

               Respondent.
------------------------------------------------x

MEMORANDUM AND ORDER
08 CV 1952 (ILG)

GLASSER, United States District Judge:

      On November 18, 2005, the petitioner pleaded guilty to violating 18 U.S.C. § 1598 and on September 29, 2006, she was sentenced to a term of imprisonment for ten years. The crime to which she pleaded guilty and for which she was sentenced was obtaining the labor and services of named persons by threats of serious physical harm and physical restraint.

      Proceeding *pro se*, nearly two years later, she filed a petition pursuant to 28 U.S.C. § 2255, seeking to withdraw her plea alleging her attorney misrepresented that the government would file a motion pursuant to U.S.S.G. § 5K1.1 and cap her sentence to imprisonment for five years thus inducing her to plead guilty.

      A review of the salient portions of her plea agreement with the government and her sworn responses given when pleading guilty drives the Court to conclude that her petition must be dismissed.

      At the proceeding during which she pleaded guilty, the petitioner was attended by her lawyers Anthony Iacullo, Esq. and Jin Han, Esq. An interpreter was also present notwithstanding that Mr. Han spoke the petitioner's language. The relevant portions of the transcript of that proceeding reflect the following after the petitioner was sworn:

> THE COURT: Ms. Kang, you just swore to tell the truth so everything you're going to say to me today should be truthful if you don't want to commit a crime called perjury which means to tell a lie after you swore to tell the truth, do you understand that?
>
> THE DEFENDANT: Yes.

Tr. at 2.

> THE COURT: Do you understand why you're here, Ms. Kang?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand everything I've told you or said to you so far?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Iacullo, do you have any questions about Ms. Kang's competence to participate here today?
>
> MR. IACULLO: No, sir, I don't.
>
> THE COURT: Then I'll make a finding to that effect.

Tr. at 3.

> After reading the Count of the indictment to which she agreed to plead guilty:
>
> THE COURT: You discussed all that with Mr. Iacullo?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Before I can accept your plea of guilty, Ms. Kang, I want to make sure that you understand a number of rights that you have as you stand here this afternoon.

Tr. at 4.

The petitioner was then advised of her rights in accordance with Fed. R. Cr. P. Rule 11(b)(1)(A-N), (2), which she stated she understood and then:

THE COURT: Did Mr. Iacullo tell you the maximum sentence the law that your accused of violating provides for is imprisonment up to 20 years?

THE DEFENDANT: Yes.

THE COURT: And did he also explain that the Court could also add a period of supervised release of up to five years.

THE DEFENDANT: Yes.

THE COURT: And Mr. Iacullo explained what that means?

THE DEFENDANT: Yes.

THE COURT: And you believe you understand it?

THE DEFENDANT: Yes.

THE COURT: And did he also tell you that you could be fined up to $250,000?

THE DEFENDANT: Yes.

THE COURT: And did he also tell you that you would be required to make restitution, that is to pay the persons who had been harmed by the conduct you're accused of, pay them back in an amount which is at least $75,000 but the exact amount will be fixed by the court at a later date?

THE DEFENDANT: Yes.

THE COURT: And did Mr. Iacullo also explain that regardless of what the sentence is, you'll be required to pay $100 which is mandatory, it is called a special assessment?

THE DEFENDANT: Yes.

THE COURT: You signed an agreement with the government, it is called a plea agreement, Ms. Iacullo – Ms. Kang, I'm sorry?

THE DEFENDANT: Yes.

THE COURT: And you went over that agreement with Mr. Iacullo?

3

THE DEFENDANT: Yes.

THE COURT: And you had the assistance of an interpreter?

THE DEFENDANT: Yes.

THE COURT: And Mr. Han went over it with you?

THE DEFENDANT: Yes.

THE COURT: And in that agreement there are a number of paragraphs which recite that you are going to be forfeiting a variety of properties, do you understand that?

THE DEFENDANT: Yes.

THE COURT: You've gone over those paragraphs, paragraphs five through eleven with Mr. Iacullo?

THE DEFENDANT: Yes.

THE COURT: And Mr. Iacullo explained that there's a strong likelihood that you'll be deported when your sentence has been completed?

THE DEFENDANT: Yes.

THE COURT: And Mr. Iacullo also spoke with you about guidelines?

THE DEFENDANT: Yes.

THE COURT: And in connection with that discussion there was an estimate as to what the guideline range in your case might be, what the minimum and maximum number of months of your sentence might be?

THE DEFENDANT: Yes.

THE COURT: And there was some estimate made for you or prediction made for you that the sentencing range might be somewhere between 121 and 151 months?

THE DEFENDANT: Yes.

THE COURT: I just want to make sure, Ms. Kang, that you understand that that was just an educated guess or a prediction --

THE DEFENDANT: Yes.

THE COURT: – which is not binding on me because I don't know for sure what your sentence will be as I talk to you. If it should turn out that your sentence is higher than has been predicted, you won't be permitted to withdraw a plea that you enter here later, and you agree to that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything I've explained to you so far?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Iacullo, do you know of any reason why Ms. Kang shouldn't plead to Count Ten?

MR. IACULLO: No, Your Honor, I don't.

THE COURT: Ms. Kang, how do you plead to that charge that I read to you about getting and trying to get the labor and services of Jane Does by threatening them with harm, physical restraint by means of a plan intended to cause them to believe that if they didn't perform the work, they would suffer some physical restraint and serious harm and by means of abusing, threatening to abuse the law and the legal process, how to you plead to that charge, guilty or not guilty?

THE DEFENDANT: I plead guilty.

THE COURT: Is anybody forcing you to plead guilty here today?

THE DEFENDANT: No.

THE COURT: You're telling me you are guilty voluntarily of your own free will?

THE DEFENDANT: Yes.

| | |
|---|---|
| THE COURT: | Now, you told me that you went over this agreement that you entered into with the government with Mr. Han. Do you want me to go over it with you as well or do you believe you understand it? |
| THE DEFENDANT: | I will just accept it. |
| THE COURT: | I'm sorry? |
| THE DEFENDANT: | I will just accept it. |
| THE COURT: | I don't quite understand what you're saying. Do you want me to go over it with you, Ms. Kang, or do you believe you understand it all? |
| THE DEFENDANT: | I understood. |
| THE COURT: | I want to make sure you did understand that you won't appeal your sentence if it is not more than 151 months, did you understand that you made such an agreement? |
| THE DEFENDANT: | Yes. |
| THE COURT: | You understand what it means to give up your right to appeal? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And you're giving up that right voluntarily? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And you also gave up your right to challenge the validity of the proceedings here this afternoon, did you understand you gave up that right as well? |
| THE DEFENDANT: | Yes. |

\* \* \*

| | |
|---|---|
| THE COURT: | Has anybody made any promise to you as to what your sentence will be? No? |
| THE INTERPRETER: | Should I just explain again, translate over again? |

THE COURT:        The question was has anybody made any promise to you as to what your sentence will be?

THE DEFENDANT:    No.

THE COURT:        Did I understand that Ms. Kang wants to make her own allocution?

* * *

MR. IACULLO:      . . . . If I could proceed and read that and it will be translated as I do so:

    During 2003 in Queens, New York we, meaning Mrs. Kang and Mr. Kang, obtained the labor and services of Korean women, including a person referred to as Jane Doe No. 1. We brought women into the United States from Korea. They worked for us in a room salon called The Renaissance Bar. Korean women brought into this country also worked at nail salons that we owned and that I ran. This was done in exchange for the opportunity to enter the United States. When these girls worked at The Renaissance Bar and the nail salons we told these women to surrender their passports to us and to sign a contract. The contract required the women to work off a debt. The amount of this debt ranged from $10,000 to $20,000. Those women who signed the contracts agreed that if they failed to repay the debt, they could be criminally charged with fraud in Korea. We were the organizers of this operation to bring the women into the United States. Some of the women who were brought in from Korea and worked for us in the nail salons were under these conditions for more than 180 days. One of the women who was working for us at the nail salon was assaulted – I'm sorry at The Renaissance Bar, I'm sorry – One of the women working for us at The Renaissance Bar was assaulted and experienced extreme physical pain as a result of the assault. It was my intention to obstruct justice when we tried to have two of the women leave the country.

    Thank you, Your Honor.

THE COURT:        Ms. Kavanagh?

MS. KAVANAGH:     Judge, I believe that Ms. Kang has to answer that that is her allocution even though her attorney proffered it to the Court but the government wold be satisfied with that allocution.

MR. IACULLO:      Mrs. Kang.

7

  THE DEFENDANT:  Yes.

  MR. IACULLO:  Your Honor, just for the record, I sat down with Mr. Kang - Mrs. Kang yesterday and Mr. Han at MDC and also this morning we had met and these are Mrs. Kang's words as I read them to you, to the Court.

  THE COURT:  Is everything Mr. Iacullo said to me correct, Ms. Kang?

  THE DEFENDANT:  Yes.

Tr. at 6-14.

  The relevant portions of the plea agreement are:

14.  No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all prior promises, agreements or conditions between the parties. To become effective, this agreement must be signed by all signatories listed below.

  At the very end of that agreement, the petitioner placed her signature beneath the following statement:

    I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

  <u>Petitioner's signature</u>
  Defendant

  Approved by:

  <u>S/         </u>
  **Counsel to the Defendant**
  **Anthony Iacullo**


  Translated by:


  <u>S/         </u>
  **Jin Han**
  **Attorney at Law**

Upon receipt of the petition, the Court, as is its practice, by letter dated May 10, 2008, advised Mr. Iacullo of his client's allegation of ineffective assistance and attached her petition. In accordance with Sparman v. Edwards, 154 F.3d 151 (2d Cir. 1998), the Court invited Mr. Iacullo "to be heard and to present evidence in the form of live testimony, affidavits or briefs." Mr. Iacullo has not accepted the invitation.

## **Discussion**

In Yushuvayev v. United States, 532 F. Supp.2d 455 (E.D.N.Y. 2008), this Court discussed the enforceability of a defendant's waiver of a right to appeal to a claim of ineffective assistance of counsel and concluded that United States v. Oladimeji, 463 F.3d 152 (2d Cir. 2006), "contemplated that a defendant alleging ineffective assistance of counsel shall not be barred by a waiver of the right to appeal from bringing a collateral attack under § 2255 asserting [ineffective assistance of counsel]." This petition will, therefore, be entertained notwithstanding the waiver but questioning the wisdom of permitting a knowing and voluntary waiver given in exchange for the benefit of a bargained for plea agreement to be rendered meaningless by simply asserting a claim of ineffective assistance.

To be entitled to relief, Ms. Kang must demonstrate a colorable claim of ineffective assistance and has the burden of meeting the two-pronged test for ineffective assistance set forth in Strickland v. Washington, 466 U.S. 668 (1984): (1) That counsel's performance was deficient and (2) that she was prejudiced by his performance. id. at 687. Those patently vague criteria are considerably enlarged by a variety of elaborations which, understandably, are not more measurably specific.

I list those elaborations, sprinkled as they are throughout the opinion, without an attribution of citation to each:

- The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
- A defendant's claim of ineffective assistance has two components: (1) that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense.
- The proper standard for attorney performance is that of reasonably effective assistance.
- A guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases."
- When the defendant complains of ineffective assistance he must show that counsel's representation fell below an objective standard of reasonableness.
- More specific guidelines are not appropriate. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.
- In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.
- Judicial scrutiny of counsel's performance must be highly deferential.
- A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time.

- A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

- A court must judge the reasonableness of counsel's challenged conduct on the facts of a particular case, viewed as of the time of counsel's conduct.

- The court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Most relevant to the determination of this case given its context, is the showing the defendant must make "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Although the defendant alleges that she was "induced" to plead guilty by counsel's "misrepresentation" regarding a 5K1.1 motion, absent is an explicit representation by her that were it not for that misrepresentation she would have elected to stand trial, as would have been her right, on an indictment in which she was named in 16 of 22 Counts.

The transcript of the sentencing proceeding (Ex. C to Govt. Mem.) and the defendant's sentencing memorandum (Ex. D to Govt. Mem.), reflect the defendant's belief that a 5K1.1 motion should have been made by the government. That belief was based upon a series of proffer sessions but not evidenced by a written agreement resulting from them to make such a motion, ostensibly because in the government's view some of the information provided by the defendant was false. (Govt. Mem. at 10-

11; Ex. C at 11-14).

In any event, her representation of such an inducement was false or she committed perjury when she pleaded guilty. After swearing to tell the truth she acknowledges being advised that the maximum sentence authorized for the crime she committed was 20 years and that the advisory guideline sentence was in a range between 121-151 months, a guideline range to which and to the facts supporting it, she stipulated. (Ex. B. at ¶ 2, Govt. Mem.) That guideline calculation and her stipulation to the facts supporting it were clearly spelled out in her plea agreement which she acknowledged that she read, discussed in its entirety with her lawyer and understood.

The transcript of the proceeding at which Mrs. Kang pleaded guilty establishes beyond cavil that she admitted her guilt and in her own words, stated that her plea was not coerced and that no promises were made to induce it. A "strong presumption of verity" attaches to admissions of guilt at a plea allocution. United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "A defendant's bald statements that simply contradict what [s]he said on [her] plea allocution are not sufficient grounds to withdraw the guilty plea." United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001). I paraphrase an *en banc* decision of the Court of Appeals for the District of Columbia, speaking through Judge Skelly Wright in United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975). Were a mere assertion of ineffective assistance sufficient to render meaningless a knowing and voluntary waiver of a right to bring a collateral attack pursuant to § 2255, the making of such an attack would effectively be an automatic right. There are few, if any, criminal cases where a defendant cannot devise some story or theory which if believed, would achieve a result she seeks. A guilty plea involves making difficult decisions. Were the making of a

12

collateral attack automatic in every case where the defendant decides to alter her tactics, the guilty plea would "become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a grave and solemn act which is accepted only with care and discernment."

Wigmore observed that "the moral efficacy of the oath has long since ceased to be what it once was." 6 James H. Chadbourne, Wigmore on Evidence § 1827 (rev. ed. 1976). If his observation is correct and the moral efficacy of an oath is also viewed by the Court as a relic of the past, then administering the oath as a prerequisite to accepting a plea (Rule 11(b)(1) Fed. R. Cr. P.), becomes a meaningless formality, a trifle and surely not a grave and solemn act.[1]

For the foregoing reasons, the petition is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 16, 2008

S/
I. Leo Glasser

---

[1] Although Ms. Kang has not run the course of conviction, sentence, appeal (her appeal was dismissed), affirmance and denial of certiorari by the Supreme Court which prompted Judge Friendly's thesis: ". . . that, with few exceptions, convictions should be subject to collateral attack only when the petitioner supplements his constitutional plea with a colorable claim of innocence," Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142 (1970), his thesis resonates upon reading Ms. Kang's plea allocution, *supra*.

Filed by ECF and copy mailed to:

Kyong Ja Kang
70713-053
Pembroke Station Tr. 17
Danbury, CT 06811