UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
KYONG JA KANG,

                    Petitioner,               MEMORANDUM AND ORDER
                                                                           08 CV 1952 (ILG)
   -against-

UNITED STATES OF AMERICA,

                    Respondent.
-------------------------------------------------x

GLASSER, United States District Judge:

      Petitioner Kyong Ja Kang, *pro se*, has moved to amend her petition pursuant to 28 U.S.C. § 2255 ("§ 2255"). In September 2008, the Court inadvertently dismissed her original petition after receiving the government's response without giving her the opportunity to reply. However, instead of submitting a reply, Petitioner moved to amend her motion by adding twelve additional claims of constitutional error relating to her conviction (pursuant to a guilty plea) and sentencing. For the reasons stated below, Ms. Kang's motion to amend the petition is granted and, as amended, the petition is dismissed.

## FACTS

      On May 5, 2008, Petitioner, proceeding *pro se*, filed a motion pursuant to § 2255 seeking to withdraw her guilty plea on the basis of ineffective assistance of counsel. Petitioner asserted specifically that she had been induced to plead guilty by her attorney's misrepresentation that the government would file a motion pursuant to U.S.S.G. § 5K1.1, capping her sentence to imprisonment to five years.

1

On September 17, 2008, the Court dismissed her petition on the merits. See Kang v. United States, No. 08 Civ. 1952 (ILG), 2008 WL 4283342 (E.D.N.Y. Sept. 17, 2008), familiarity with which is assumed. The Court found that Petitioner's allegations were belied by her sworn testimony during her guilty plea and by the express terms of the plea agreement, which she signed and acknowledged that she reviewed with her attorneys and understood. Nevertheless, and despite her knowing and voluntary appeal waiver contained in the plea agreement, the Court considered the merits of Petitioner's ineffective assistance claim. Id.; see Yushuvayev v. United States, 532 F.Supp.2d 455 (E.D.N.Y.2008) (finding appeal waiver unenforceable as regards an ineffective assistance claim and considering that claim despite petitioner's waiver of his right to collaterally attack his conviction and sentence). The Court concluded that Petitioner could not demonstrate prejudice under a Strickland analysis because Petitioner nowhere alleged that she would have exercised her right to trial but for her attorney's alleged misrepresentation.

The day after the Court filed its Memorandum and Order dismissing the petition, the Pro Se Office of this Court received Petitioner's request for an extension for of time to submit a reply. papers. The Court granted her request with assurance that it would reconsider its prior dismissal if warranted by her reply. Dkt. No. 11 (Order dated Oct. 2, 2008).

**Petitioner's Motions**

In March 2009, Petitioner filed not a reply but a motion for leave to amend the § 2255 motion to include twelve additional due process and ineffective assistance of counsel claims. Petitioner also submitted motions for "Leave to Submit Affidavits And

2

Related Documents," and for "Immediate Evidentiary Hearing, Discovery, Appointment Of Counsel And IFP Status."[1] In a memorandum of law in support of the proposed amended petition, Petitioner claims that she was deprived of due process in the following respects: (1) her sentence was based on inaccurate information for which there was no factual basis and led to several enhancements to her base offense level; (2) she did not receive an addendum to the presentence report prior to being sentenced; (3) she was prosecuted in "bad faith" because the government did not adequately investigate the credibility or accuracy of statements by the complaining witnesses; (4) her conviction is based on material perjured testimony; and (5) she is actually innocent of the crime to which she pleaded guilty. Pet. Memorandum of Law in Support of § 2255 Petition ("Pet. Memo.").

In addition, Petitioner asserts that she received ineffective assistance of counsel. In addition to the ineffectiveness claim set forth in her original § 2255 petition, Petitioner now claims that her defense attorneys rendered ineffective assistance when they: (1) did not adequately review with her the evidence against her, and allowed the defense of her co-defendant (and husband) Wun Hee Kang ("Mr. Kang") to "overshadow" her defense; (2) did not adequately investigate the government's allegations against her; (3) negotiated her plea agreement without first ensuring that there were factual and legal bases for the government's allegations; (4) failed to present certain arguments at her sentencing proceedings; (5) did not adequately review the presentence report with her, and failed to object when the government did not provide

---

[1] She was granted permission to proceed in forma pauperis status in May 2008. See Dkt. Sht. at 5/5/2008 Entry.

the final Addendum to that report prior to sentencing; and (6) failed to investigate her mental health and advocate for a lower sentence on that basis. Finally, she argues that she received ineffective assistance of appellate counsel.

Petitioner submits several documents in support of her proposed amended petition. (Petitioner's Motion To Submit Affidavits and Related Documents ("Pet. Docs.")). She includes a lengthy personal declaration, dated March 4, 2009, that sets forth in detail the circumstances of her early life in Korea and her emigration to the United States, the establishment of her businesses there and the circumstances related to the criminal charges against her, up to and including her guilty plea and sentencing. Pet. Docs. Ex. 1 ("Pet. Decl.") She also submits an affidavit of Geeho Chae ("Chae") dated January 13, 2009 and notarized in Korea. Mr. Chae's affidavit states that former New York City Police Department officer Dennis Kim ("Officer Kim"), who was later convicted of federal corruption charges, told Chae (one of Officer Kim's codefendant's) that he had "encouraged the complainants to exaggerate the charges." Pet. Docs. Ex. 2 ("Chae Aff."). ¶ 6. She also submits a New York Post article, dated March 10, 2006, regarding the arrest of Officer Kim and another officer. Pet. Docs. Ex. 3. The article states that the officers were charged with "protecting a brothel" in Queens and that the brothel was owned by "Geeho Chae" and another owner. Id.

Petitioner has submitted letters from Jane Jimin Cho ("Cho"), Weol Bong Kim ("Kim") and Seung Hee Lee ("Lee"). Cho claims to be a medical doctor and the landlord of one of the nail salons she operated in Queens. Pet. Docs. Ex. 4. Cho states that she frequently observed her at work in the nail salon and that she never observed that she treated her employees poorly. Kim states that he is a Pastor at a church that Petitioner

4

attended and that he also frequently observed her both at home and at work in the nail salons. Pet. Docs. Ex. 5. He states that "the employees were joyful and hard at work every time" he visited one of Her nail salons. Lee states that she lived with the two complainants in this case and that, during the criminal investigation, complainants told Lee to lie and to tell the police that she had been kept in confinement. Pet. Docs. Ex. 7.

Petitioner has also submitted a document purporting to be a "partial Korean Criminal History" of one of the complainants, Pet. Docs. Ex. 6, interview notes between investigators hired by her defense counsel and seven employees of the Renaissance club, Pet. Docs. Ex. 8, and a copy of the Judgment and conviction in this case, Pet. Docs. Ex. 9.

**Government's Response**

In its response, the government argues that Petitioner's claims which are unrelated to those of ineffective assistance of counsel are barred by her knowing and voluntary waiver of appeal contained in the plea agreement. Government's Response in Opposition to Petition to Vacate Conviction Pursuant to 28 U.S.C. § 2255 ("Gov't. Resp.") at 27. In addition, the government argues that all of the claims in Petitioner's proposed amended § 2255 motion lack merit. The government has attached to its response two Sentencing Memoranda submitted by defense counsel on behalf of the Petitioner. Gov't. Resp. Exhs. D, I. In addition, Petitioner's trial counsel, Anthony J. Iacullo, has submitted an affirmation responding to her claims of ineffective assistance. Id. Ex. H ("Iacullo Aff."). In it he states that he attended "numerous meetings" with Petitioner, Mr. Kang (her husband and co-defendant) and his attorney at which they discussed "all aspects of this case." Id. ¶ 2. Mr. Iacullo also affirms that he and counsel

for Mr. Kang utilized private investigators who conducted an "extensive inquiry" in order to obtain information beneficial to the defense at trial. Id. ¶ 5. Mr. Iacullo, "conservatively estimate[s] that more than 25 meetings took place during the course of this criminal prosecution between [Iacullo,] Mrs. Kang and on most occasions her husband and his counsel." Id. Mr. Iacullo also states that he "cannot conceive of any additional efforts that could have been undertaken to more adequately advise Mrs. Kang of the case against her." Id. ¶ 6.

**Petitioner's Reply**

Petitioner has submitted a reply brief in which she largely reiterates her arguments in support of the amended § 2255 petition. She also raises specific counter-arguments to the government's opposition. She claims, for example, that she was harmed by the government's failure to provide the addendum to the presentence report to her until the day of sentencing because this addendum "tentatively resolved the issue of what felony may have been committed during the offense conduct to support yet another enhancement." Reply at 3. With respect to the Chae affidavit, she asserts that the government had reason to know of Chae's allegations in 2005 – even though the affidavit was not prepared until January 2009 – since Officer Kim was suspected of corruption at the time. See Reply at 5. Petitioner reasserts that she never understood the nature of the charges against her due to her attorneys' failure to discuss those charges with her. See Reply at 9-10.

**DISCUSSION**

I.  **Motion to Amend**

Federal Rule of Civil Procedure 15 governs motions to amend a habeas petition. See 28 U.S.C. § 2242 (stating that a petition for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); see also Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002) ("A motion to amend a habeas petition is analyzed under the standards set forth in [Rule] 15(a)"); Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) (same). Courts are instructed to "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a). While the decision whether or not to grant leave to amend "is within the discretion of the District Court," leave should be freely granted "in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Petitioner explains her delay in raising the new claims in her proposed amended petition by stating that she filed the initial § 2255 motion "hastily," and that "she was not at all informed about the full scope of a habeas [sic]." Pet. Decl. at 19. She further notes that her motion to amend comes within the one-year deadline imposed on habeas petitions in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2244(d). In addition, the government has not affirmatively opposed the motion and, in the absence of any "apparent or declared reason" to deny leave, the Court grants Petitioner's motion to amend.

## II. Petitioner's Ineffective Assistance of Counsel Claims

As noted in the Court's earlier Memorandum and Order dismissing the initial petition, the Court has previously concluded that "a defendant alleging ineffective assistance of counsel shall not be barred by a waiver of the right to appeal from bringing a collateral attack under § 2255 asserting [ineffective assistance of counsel]." Yushuvayev, 532 F.Supp.2d at 455; see also United States v. Oladimeji, 463 F.3d 152 (2d Cir. 2006). Thus, Petitioner's claims of ineffective assistance of counsel will be addressed.

### A. Standard of Review For Ineffective Assistance of Counsel Claims

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that her lawyer's performance "fell below an objective standard of reasonableness" and that the lawyer's deficient performance prejudiced her. Strickland v. Washington, 466 U.S. 668, 688 (1984). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court held that the Strickland test applies to challenges of guilty pleas based on ineffective assistance of counsel claims. Hill, 474 U.S. at 59. In such a case, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Id.; Benvenuto v. United States, No. 01 Civ. 2642, 2001 WL 1590515 at *2 (E.D.N.Y. Nov. 7, 2001) (Glasser, J.).

**B. Petitioner Has Failed To Support Her Contention that Her Attorneys' Performance Was Objectively Unreasonable Or That She Was Prejudiced By That Performance**

Petitioner's new ineffective assistance of counsel claims suffer from the same deficiencies that compelled the dismissal of her original petition. She attempts to overcome those deficiencies contending that the Court should ignore her sworn guilty plea allocution for which she faults counsel. She alleges, in that regard, that Mr. Iacullo affirmatively counseled her to perjure herself if necessary to effectuate the plea agreement. Specifically, she alleges that:

> Contrary to what Iacullo said at my plea hearing, he did not review my allocution with me that morning. He simply produced a "boilerplate" allocution statement for both [Mr. Kang] and me and told me to acknowledge it without regard to whether it really reflected what I had done or not. The only discussion we had was him telling me that, no matter what, I should keep saying "yes" to everything the judge asked me, and to sign the agreement. And that is what I did.

Pet. Decl. at 17.

Her belated historical revision is belied by her sworn affirmation when she pleaded guilty that she had discussed her case thoroughly with counsel. Mr. Iacullo stated at the plea hearing that he had met with Petitioner the day prior to and the morning of the hearing, and that the allocution represented, "[Petitioner's] words as I read them to you, to the Court." Gov't. Resp. Ex. A at 14. The Court then asked Petitioner, "[i]s everything Mr. Iacullo said to me correct?" Id. Petitioner replied, "[y]es." Id.

9

In her Memorandum of Law, Petitioner asserts her ignorance of the charges against her, and of the evidence the government would present to support them, as follows:

> I did not have a clear understanding of what the specific charges were against me. I understood that the government, by its amended Oct. 2005 indictment, was alleging I had violated the law at my nail salons, but I did not have a clear understanding of what this "forced labor" charge meant. I thought it meant using a broker. I did not understand (until I worked on this habeas) that I was being accused of "holding" my nail salon employees to involuntary labor, and coercing them to work for me. It was not explained to me by counsel.

Pet. Memo. at 21.

This excerpt from the plea proceeding, among others, would justify prosecuting her for perjury:

> THE COURT: Ms. Kang, I'm told that you want to plead to a charge which reads that between April of 2003 and November of that year, within the Eastern District of New York and elsewhere, you and Wun Hee Kang and Hung Goo Kang and others obtained and attempted to obtain the labor and services of Jane Does 1, 2 and 3 by threats of serious harm to and physical restraint against those persons by means of a plan which was intended to cause those persons to believe that if they didn't perform such labor and services, they would suffer harm and physical restraint and you and those others obtained and attempted to obtain those services by means of the abuse and threatened abuse of law and the legal process.
>
> *You discussed all that with Mr. Iacullo?*
>
> THE DEFENDANT: *Yes.*
>
> THE COURT: And you understand what it is you're charged with?
>
> THE DEFENDANT: Yes.

Govt. Resp. Ex. A (Transcript of Plea Proceedings) at 4 (emphasis added). Her retroactive amnesia is underscored by Mr. Iacullo's affirmation that he made "all efforts . . . to apprise [Petitioner] of the case against her and to assess the likelihood of success should she proceed to trial." Iacullo Aff. ¶ 5.

The observation of Judge Skelly Wright made in United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975), to which the Court alluded in Kang, supra at *6, merits repetition here:

> A guilty plea frequently involves the making of difficult judgments. Were withdrawal automatic in every case where the defendant decided to alter [her] tactics and present [her] theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a grave and solemn act which is accepted only with care and discernment.

Barker, 514 F.2d at 221 (internal quotations and citations omitted). Judge Wright's observation is exquisitely applicable here.

### 1. Petitioner's Claims that Counsel Was Conflicted

Petitioner's first claim of ineffective assistance is based on her assertion that she, "was made to understand by [her] counsel from the beginning that the central focus of the prosecution was [Mr. Kang], and management of the Renaissance bar." Pet. Memo. at 20-22. Petitioner claims that, as a result, her defense was "overshadowed" by that of her husband and that Mr. Kang's "counsel essentially ran our joint defense." Id. at 22. Petitioner also claims that her counsel did not sufficiently discuss with her the charges against her. Specifically, Petitioner asserts that her, "private conversations with [her]

11

attorneys was minimal and essentially limited to family matters. It did not include discussion of the specific allegations against [her]." Pet. Memo at 21.

This assertion is explicitly belied by Petitioner's sworn acknowledgement that Mr. Iacullo discussed the crime which the Court read to her and to which she wished to plead guilty. See Plea Tr. at 4. It is also belied by her sworn acknowledgement that Mr. Iacullo discussed with her the statutory penalties applicable to the crime to which she wanted to plead guilty. See id. at 6. She swore that he discussed with her sentencing guidelines that were advisory and what those guidelines might suggest as to what a sentencing range in her case might be. See id. at 8. She swore that she had discussed her plea agreement with Mr. Iacullo and had the assistance of an interpreter and of Mr. Han, her Korean-speaking co-counsel, when she did. See id. at 7. She swore that she discussed and understood paragraphs 5-11 of her plea agreement pertaining to the forfeiture of her properties. See id. at 7-8. She swore that she understood that she faced deportation when her term of imprisonment was served. See id. at 8.

To the extent, if at all, that the Petitioner's assertions can be construed as veiled conflicts of interest arising out of a joint defense, the fact that a defendant chooses to engage in a joint defense is not a conflict of interest *per se*. See LoCascio v. United States, 462 F.Supp.2d 333, 338 (E.D.N.Y. 2005) (Glasser, J.) ("A defendant of course is free to pursue a joint defense strategy with a co-defendant and such a strategy does not create a conflict of interest").

### 2. Petitioner's Claims that Counsel Performed an Inadequate Investigation

Petitioner's second and third claims of ineffective assistance center on the claim that defense counsel's investigative strategy of "locating and interviewing Renaissance Bar employees, and other contacts all related to [Mr. Kang]. . . . was of limited assistance to" her. Pet. Memo. at 22. She claims that, because of this inadequate investigation, her stipulation to the Guidelines range contained in her plea agreement contained "numerous, and obvious, factual and legal errors." Id. at 25. Failure to conduct adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel under Strickland. See 466 U.S. at 690-91. In order to sustain such a claim, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation. See, e.g., Curry v. Burge, 2004 WL 2601681, at *31 (S.D.N.Y. Nov. 17, 2004).

Petitioner offers twelve investigative leads that, she argues, defense counsel should have pursued. These leads fall under three primary subject areas: her conduct of her Queens nail salon businesses; her upbringing and background, including her past experience with mental illness; and weaknesses in the government's case, including the credibility of both the complainants and the "parallel investigation of NYPD officer Dennis Kim." Id. at 24-25. While her list of leads is exhaustive, she fails to demonstrate how such evidence would have affected her decision to plead guilty, assuming such evidence was even arguably relevant. First, with respect to the conduct of her Queens nail salon businesses, she argues that investigation along these lines would have revealed that many of the Kangs' employees "worked freely, without coercion [and] could and did change to other jobs, as they wished." Pet. Memo. at 23. However, this

13

Court has previously noted that "all of the criminal charges in th[is] action arose from the Kangs' treatment of the two cooperating witnesses," who worked at the Renaissance Bar, not the nail salons. Yushuvayev, 532 F.Supp.2d at 455, 459 n.2. Moreover, the defense investigation notes she herself submitted demonstrate that defense counsel collected evidence along these lines that Petitioner suggests. The notes, dated February 11, 2004 (before Petitioner's guilty plea), indicate that several of the Renaissance employees made favorable statements about the Kangs. Pet. Docs. Ex. 8. One Renaissance employee notes that she had "no written contract for work" with the Kangs and that other employees were "never mistreated" by the Kangs. Id. (Interview with Renaissance employee Gui Jung Moon). The other Renaissance employees interviewed (seven in all) make similar favorable statements about the Kangs. Several interviewees also state their belief that the complainants against the Kangs are not being truthful. These interview notes provided by her make clear that the defense collected information of the sort that she now claims would have affected her decision to plead guilty. Yet she does not explain why similar information from nail salon employees would have affected her decision. Accordingly, she has failed to demonstrate a reasonable probability that she would not have pleaded guilty had defense counsel followed the nail salon-related leads she now suggests.

Petitioner also claims that defense counsel was ineffective for failing to investigate further the credibility of the two complainants and the relationship of former NYPD officer Kim to the investigation in this case. With respect to former officer Kim, the crux of Petitioner's current arguments center around the Chae affidavit which, she believes, adds credibility to her contention that the complainants fabricated their claims

14

against her. Petitioner claims that she "lost considerable leverage without [the] information" contained in the Chae affidavit. Pet. Memo. at 24.

As noted above, the defense's interviews with Renaissance employees revealed that several of those employees believed the complainants were not telling the truth. Moreover, Petitioner raised her concerns over former officer Kim's involvement in her case in a letter to the Court prior to her sentencing. Gov't. Resp. Ex. C (Transcript of Sentencing Proceedings) at 11-13. Importantly, she nowhere states how defense counsel could have obtained the information in the Chae affidavit at the time they were advising her on her decision to plead guilty. Thus, even were the Court to credit the information in the Chae affidavit, created in 2009, and to read every possible inference into that affidavit in her favor, she has not demonstrated that such information was available to affect her decision to plead guilty in 2005. Accordingly, she has failed to show that her attorneys rendered objectively unreasonable assistance of counsel with respect to their investigation.

Finally, she argues that defense counsel was deficient in not interviewing her brother, who would have provided information regarding her "upbringing, [her] extreme poverty and isolation, [her] mother's chronic depression, [her] extremely reserved nature and in particular the mental health problems and abuse she experienced further into her marriage." Pet. Memo. at 23. However, she does not state how the failure to interview her brother affected her decision to plead guilty. As the government points out, defense counsel did in fact raise much of that information as a basis for mitigating her sentence. See Gov't. Resp. at 50; Exhs. D, I. In sum, the Court finds that this claim of ineffective assistance is without merit.

15

Petitioner's claim that her attorneys were ineffective for stipulating to the Guidelines calculation contained in the plea agreement similarly has no basis. The Court rejects this claim based on her sworn plea allocution. Petitioner cites United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004), for the proposition that a defense attorney's decision to stipulate to facts is one of those "strategic choices" which, if "made after thorough investigation of law and facts relevant to plausible options," are "virtually unchallengeable." Here, it was Petitioner who swore to the Court that she had gone over the plea agreement with both Mr. Iacullo and Mr. Han, who spoke her language, and that she additionally had the assistance of an interpreter in doing so. Gov't. Resp. Ex. A at 7. The Court also asked her whether she wanted the Court to go over the plea agreement with her, or whether she believed that she understood it all, and she replied, "I understood." Id. at 10. This claim of ineffective assistance is similarly meritless.

### 3. Petitioner's Claims that Counsel Performed Ineffectively At Sentencing and On Appeal

Petitioner's remaining claims of ineffective assistance of counsel relate to counsel's performance in connection with Petitioner's sentencing and appeal. Specifically, she claims that Mr. Iacullo: (1) failed at sentencing to raise factual and legal errors contained in the plea agreement's Guidelines calculations; (2) failed to review with her an addendum to the presentence report; and (3) failed to conduct a psychiatric examination of her and use the results to argue for a lower sentence. In addition, she argues that her appellate counsel breached his duty under Anders v. California, 386 U.S. 738 (1967), to identify trial counsel's non-frivolous errors with respect to sentencing.

Petitioner nowhere alleges – as she must to sustain a claim of ineffective assistance – that, but for these errors, she would have elected to go to trial and face

conviction on the fifteen other counts with which she was charged in the indictment. Mr. Iacullo submitted two sentencing memoranda in which he argued strenuously for a downward departure based on her family circumstances, lack of criminal intent, substantial assistance to the government and her suffering while incarcerated. Gov't. Resp. Exhs. D, I. A review of the sentencing proceedings reveals that Mr. Iacullo successfully argued that a two-point vulnerable victim enhancement should not be applied. Id. Ex. C at 3. With respect to the enhancement related to sexual abuse, Mr. Iacullo argued that Petitioner had "in no way stipulated or agreed that that serious bodily injury involved sexual abuse." Id. at 16. However, the Court noted that she was ultimately bound by the plea agreement, in which she stipulated to the facts underlying the Guidelines calculations. Id. at 17-18. Under these circumstances, the Court concludes that Mr. Iacullo's performance with respect to sentencing was not objectively unreasonable.

### III. Petitioner's Remaining Claims

In its previous decision dismissing the petition in this case, the Court held that the appeal waiver in the plea agreement that Petitioner signed was unenforceable as to her claims of ineffective assistance of counsel. However, having found that there is no merit to her claims of ineffective assistance of counsel, the Court also finds that Petitioner's waiver of her right to collaterally attack her conviction and sentence is enforceable. See Muniz v. United States, 360 F.Supp.2d 574, 577 (S.D.N.Y. 2005) ("Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced") (citing United States v. Monzon, 359 F.3d 110, 119 (2d Cir.2004)). Accordingly, the Court finds

17

that Petitioner's claims alleging "5th Amendment Due Process Violations," numbered I.A.1. through I.C., were effectively waived.

## IV.  Motion for an Evidentiary Hearing

Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  In Chang v. United States, 250 F.3d 79 (2d Cir.2001), the Second Circuit made clear that a Court may appropriately rule on a § 2255 motion without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary."  250 F.3d at 85-86.

For the reasons given at some length, the allegations of Petitioner's motion – which, for the most part, are belied by her sworn acknowledgements when she pleaded guilty – cannot be accepted as true without regarding the solemnity of her oath a meaningless formality mouthed as a mindless mantra.  The documentary record, the minutes of the proceeding at which she pleaded guilty, without more, dispels any justification for an evidentiary hearing.  To fail to attribute the significance of her intelligent and voluntary confession of guilt which her motion would ignore and disavow and provide a hearing would, "seriously distort" and unduly strain "the very limited resources society has allocated to the criminal process." Mackey v. United States, 401 U.S. 667, 691 (1971) (Harlan, J., concurring).  Accordingly, Petitioner's motion for an evidentiary hearing is denied.

V.   **No Certificate of Appealability Shall Be Issued**

Pursuant to 28 U.S.C. § 2253(c)(1)(B), a final order in a Section 2255 proceeding is not appealable unless the district court issues a certificate of appealability. Such a certificate should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n. 4 (1983)). For the reasons noted in the Court's discussion of the merits of Ms. Kang's petition, this case fails to satisfy that standard. Therefore, no certificate of appealability shall be issued.

Justice Harlan's concurring opinion in Mackey, 401 U.S. at 691, continues to ring true today:

> It is, I believe, a matter of fundamental import that there be a visible end to the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view.
>
> . . .
>
> Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in so doing, we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.

## CONCLUSION

Petitioner's motion to amend her petition pursuant to 28 U.S.C. § 2255 to vacate her conviction and sentence is GRANTED. For the foregoing reasons, the amended petition is hereby DISMISSED. The Clerk of the Court is directed to enter final judgment on this petition and to close the case.

**SO ORDERED.**

Dated:   Brooklyn, New York
         November 19, 2009

                                            /s/
                                    I. Leo Glasser
                                    United States Senior District Judge


**Copies of the foregoing memorandum and order were electronically sent to:**

Counsel for Petitioner:

Kyong Ja Kang, *Pro Se*
70713-053
Federal Correctional Institution
33 1/2 Pembroke Station
Route 37
Danbury, CT 06811


Counsel for Respondent:

Anthony M. Capozzolo
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201